UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HICKS, JASMIN MCBRIDE, and LORENZO SMITH, | ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 06852 |
| v. | ) ) ) | Judge Edmond E. Chang |
| COOK COUNTY SHERIFF'S OFFICE, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In early July 2015, Lorenzo Smith was driving with his girlfriend, Jasmin McBride, when he was stopped by police. R. 121, Jt. Am. Compl. ¶¶ 13, 15-16.[1] What started as a routine traffic stop turned into an alleged scheme to extort guns from Smith and from McBride's mother, Patricia Hicks, in exchange for McBride's freedom. *See id.* ¶ 14. Hicks filed a lawsuit, and then Smith and McBride filed a separate one. The Court consolidated the two separate cases, and the Plaintiffs have now filed a joint complaint. *See* R. 112, 09/29/17 Opinion at 28-29; R. 130 (terminating Case No. 17 C 4951). The Plaintiffs bring a variety of claims, but only two are pertinent for this Opinion: (a) Smith's claim for illegal seizure under the Fourth Amendment (Count 1); and (b) his claim that the Defendants failed to prevent the Fourth Amendment violation (Count 3).[2] Now one of the police officers

---

[1]Citations to the record are noted as "R." followed by the docket number, and where necessary, the page or paragraph number.
[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.

named in the suit moves to dismiss those counts. R. 122, Def. Mot. to Dismiss at 1-2. For the reasons discussed below, the motion to dismiss is denied.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Joint Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Plaintiffs allege that, sometime before July 2015, a group of Defendant Officers—among them Lynwood police officer Michael Mears—agreed to obtain firearms from civilians by using threats of prosecution and by force. Jt. Am. Compl. ¶ 14. The ensuing encounters were not to be officially reported. *Id.* According to the Plaintiffs, the Cook County Sheriff's Office condones these shakedowns by their officers, sometimes even in coordination with other police departments. *Id.* ¶ 10.

As noted earlier, in July 2015, Lorenzo Smith was stopped by officers while driving; his girlfriend Jasmine McBride was a passenger in the car. Jt. Am. Compl. ¶¶ 13, 15-16. According to the Plaintiffs, the traffic stop was part of joint activity between the Village of Lynwood Police and Cook County Sheriff's deputies. *See id.* ¶¶ 6, 15. Although it is unclear why the officers pulled Smith over in the first place, Smith admitted to the officers that he did not have a valid driver's license. *Id.* ¶ 17. During the stop, the officers discovered (through their databases) that McBride was on probation. *Id.* ¶ 19. (It is unclear what led the officers to look up McBride's records, as she was the passenger, not the driver.)

According to Smith and McBride, Officers Mousel and Murphy began to threaten them, demanding that they obtain and turn over firearms to the officers.

Jt. Am. Compl. ¶ 18. But neither of them even owned a gun. *Id.* ¶ 29. The officers threatened that if Smith and McBride refused or failed to get the guns, the officers would falsely charge McBride with a crime. *Id.* Because she was on probation, the threat of an arrest put McBride at significant risk of going to prison, because a revocation of probation could lead to prison. *Id.* ¶ 20.

After demanding the guns and threatening McBride with false charges, the officers asked Smith, "how much do you love her," to put more pressure on him. Jt. Am. Compl. ¶ 22. The officers eventually released Smith without charges, despite the fact that he had admitted to driving without a license. *Id.* ¶ 21. But they took McBride into custody, putting her into the backseat of a police car and taking her away from Smith. *Id.* ¶¶ 22, 26. The officers did not write an official report describing the events of the stop or explaining why Smith was released without charges. *Id.* ¶ 24.

From there, the Joint Amended Complaint is silent on details of Smith's involvement in the resulting exchange of gun-for-dismissal; that exchange primarily involved McBride's mother, Patricia Hicks.[3] More generally, Smith does allege that he submitted to the officers' show of authority and was "conscripted into the illegal scheme to purchase unlawful firearms." Jt. Am. Compl. ¶ 23. And Smith asserts that he "took acts in furtherance of the efforts of the individual defendants to obtain firearms." *Id.*

---

[3]For background on what allegedly happened to Hicks, see the Opinion of September 29, 2017. R. 112 at 2-6.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

## III. Analysis

### 1. Fourth Amendment Seizure (Count 1)

Section 1983 is the cause of action by which someone may vindicate constitutional rights. *West v. Atkins,* 487 U.S. 42, 49-50 (1988); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). The section is not the source of substantive rights, so the first step in pursuing a § 1983 claim is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Smith and his co-Plaintiffs allege that their Fourth Amendment right against unreasonable seizures was violated.

Smith has stated a Fourth Amendment claim if what the officers did to him effectuated a "seizure" and the seizure was unreasonable. *Kernats*, 35 F.3d at 1177. Even instances of "unreasonable, unjustified, or outrageous conduct by an officer" in general are not prohibited by the Fourth Amendment if the officer's actions did not amount to an actual seizure. *Williams v. Ind. State Police Dept.*, 797 F.3d 468, 483 (7th Cir. 2015) (quoting *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003)). A seizure occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This test requires a "contextual approach" that takes the totality of circumstances into account and asks "whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991); *see also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).

Although the totality of circumstances is the key, there are recurring circumstances that courts consider, including: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. These factors are of course not exclusive, but they help guide the analysis. *Kernats,* 35 F.3d at 1178 (citing *Bostick*, 501 U.S. at 435-37). One more point to keep in mind is that, in order for there to be a seizure, the targeted person must "actually yield to a show of authority from the police." *Tom v. Voida,* 963 F.2d 952, 957 (7th Cir. 1992) (citing *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991)).

Here, Smith has alleged enough—though barely—to survive Officer Mears's dismissal motion. Mears's best argument is that he was not even part of the traffic stop of Smith and McBride. Remember that it was Officers Mousel and Murphy who pulled over Smith and McBride. Yes, the Joint Amended Complaint later alleges that Mears seized McBride's mother (Hicks) in the ongoing extortion, but it is silent on Mears's actions towards *Smith. See* Jt. Am. Compl. ¶ 30. Nonetheless, the claim survives, because Smith has sufficiently alleged a conspiracy among (at least) the officers.[5]

To be sure, even at the pleading stage, a "bare allegation of conspiracy," or the "mere suspicion" of one will not suffice. *Cooney v. Rossiter*, 583 F.3d 967, 970-71

---

[5]Because "conspiracy" is not itself an independent cause of action under § 1983, *see Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008), the previous stand-alone conspiracy claim was dismissed, 09/29/17 Opinion at 17. But the Court left open the possibility that the Plaintiffs could hold the officers liable for constitutional violations based on a conspiracy theory of liability.

6

(7th Cir. 2009). Under § 1983, the conspiracy theory of liability requires a claimant to allege that the Defendants "reached an understanding" to deprive a plaintiff of his or her constitutional rights, and that those individuals "were willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970)) (cleaned up). Generally speaking, to survive dismissal, a plaintiff must allege "the parties, the general purpose, and the approximate date" of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

Here, Smith alleges that all of the Defendants—Officer Mears included—entered into an agreement to abuse their law enforcement positions and to use threats and force to obtain firearms—and that the agreement was formed *before* the July 2015 traffic stop. Jt. Am. Compl. ¶ 14. When Officers Mousel and Murphy pulled over Smith and McBride, it was done "as part of joint activity" with the Defendants arising from that previous agreement. *Id.* ¶ 15. Later, Smith was "conscripted into the illegal scheme" to buy unlawful guns, and allegedly "took acts in furtherance" of the Defendants' efforts. *Id.* ¶ 23. These allegations are enough to encompass Officer Mears in a conspiracy (of course, proving it at trial will be another matter).

The next question is whether Smith was subjected to a "seizure" at the hands of the conspiracy. Smith does not seem to argue that the initial stop itself was unreasonable, that is, he does not argue that there was no traffic-related basis to pull him over. "A seizure for a traffic violation justifies a police investigation of that

7

violation." *Rodriguez v. United States,* 135 S. Ct. 1609, 1614 (2015). But once the stop shifted from the purported traffic offense to the officers' extortionate demands for guns, the seizure became unreasonable. Because the purpose of a traffic stop is to address the original infraction that warranted it, the stop may "last no longer than is necessary to effectuate" that purpose. *Id.* (quoting *Illinois v. Caballes,* 543 U.S. 405, 420 (2005)). When Officers Mousel and Murphy allegedly threatened to falsely charge McBride with a crime, exposing her to revocation of probation, then they overstepped any reasonable basis for continuing the original traffic stop. Their authority for that traffic-related seizure ended when their tasks "tied to the traffic infraction [were]—or reasonably should have been—completed." *Rodriguez*, 135 S. Ct. at 1614. Even if running McBride's information through a police database was reasonable, the threat of false charges obviously was not.

Mears argues that Smith failed to allege that his liberty was restricted or that he was "not entirely free to leave after the traffic stop ended," but that is wrong. Def. Br. at 5. With his girlfriend in custody and law enforcement officers threatening her, Smith reasonably believed that he was not free to refuse their demands for guns and just leave without any restrictions on him at all—especially when doing so could jeopardize the safety of McBride. *See generally Pisciotta v. Old Nat. Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007) (drawing all reasonable inferences in favor of the plaintiff).

Even beyond the prolonged stop on the street, Smith has sufficiently alleged that the Defendants seized him by forcing him into the scheme to exchange guns for

8

McBride's release. But just barely. There is very little factual content in the Joint Amended Complaint as to what Smith did in trying to obtain a gun under the extortion's compulsion. He only alleges that he "in fact submitted" to the officers' "show of authority" and participated in the "illegal scheme to purchase unlawful firearms." Jt. Am. Compl. ¶ 23. As to what his conscription entailed, Smith only says that he "took acts in furtherance of the efforts of the individual defendants to obtain firearms." *Id.* Smith must be prepared to spell out his participation during the discovery process (which he should have done by now). But at the pleading stage, accepting Smith's allegations in the Joint Amended Complaint as true, he has pled enough. The claim survives on the same theory as Hicks's did in the previous opinion: Smith was "not free to leave in any reasonable sense," because he was not "free to refuse the officers' demands for guns" if he "wanted to prevent" his girlfriend "from being charged with a false crime and possibly being detained longer." 09/29/17 Opinion at 13. As Smith argues, his eventual release from the traffic stop "hardly left him free to go about his personal affairs." Pl. Resp. Br. at 5.

The final argument that Mears makes on this count is that Smith is trying to advance a "continuing seizure" claim that has been "repeatedly rejected by the Seventh Circuit." Def. Reply at 2. For two reasons, that argument is neither here nor there in this case. First, although the "continuing seizure" theory had been rejected by the Seventh Circuit, last Term the Supreme Court held that the Fourth Amendment does govern unlawful pretrial detention even after the start of legal process. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017). It is true that the

9

metes and bounds of that claim has not fully developed yet, and perhaps someone who makes bail (as distinct from someone who is detained prior to trial) still does not have a Fourth Amendment claim post-bail. *See Welton v. Anderson*, 770 F.3d 670, 675 (7th Cir. 2014) ("Justice Ginsburg's concurrence … urged an expanded scope under which a defendant would be considered seized 'so long as he is bound to appear in court and answer the state's charges,' whether through summons or arrest.") (citing *Albright v. Oliver,* 510 U.S. 266, 277-78 (1994) (Ginsburg, J., concurring)). But the second reason that the "continuing seizure" doctrine is not relevant here is that Smith is *not* advancing any form of it (whatever its parameters are). He argues, like Hicks successfully did, that the officers' ongoing threats and demands for guns kept Smith on a race to find and procure guns, and that ongoing restraint on his freedom amounted to a seizure. This final argument is rejected.

### 2. Failure to Intervene (Count 3)

With the survival of Count 1, the defense argument against the failure-to-intervene claim is readily rejected. It is true that a failure-to-intervene claim must be premised on some other constitutional violation. An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know" that a constitutional violation had been committed by a law enforcement official, and the officers "had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). Because Smith has sufficiently pleaded a Fourth Amendment seizure claim, his failure to

intervene claim also survives. At any time during the alleged conspiracy, Mears could have stopped the other officers (or at least he presumably could have, giving Smith all reasonable inferences). So Count 3 survives too.

### 3. Prior Stipulation

Because the claims survive, there is no strict need to address Smith's procedural argument against the dismissal motion. Smith contends that Mears violated a stipulation between the parties to move the litigation forward "in fact and in spirit," by filing the motion to dismiss. Pl. Resp. Br. at 3-4. According to Smith, the parties agreed to avoid further dismissal motions in the McBride and Smith case, because the litigation on any motions would be substantially similar to the one already decided in Hicks's case. *Id.*; *see* Case No. 17-cv-4951, R. 10, Agreed Mot. to Stay Pleading. It is true that when the Court consolidated the cases, it did instruct the parties to confer with a goal of stipulating to the dismissal of the similar claims that had been decided in the prior Opinion. R. 114, 10/10/17 Minute Entry; *see also* 09/29/17 Opinion at 28-29. After that conferral, the plan was for the Plaintiffs to file the Joint Amended Complaint so that the litigation could proceed. 10/10/17 Minute Entry.

That stipulation and plan did not explicitly foreclose a Defendant from moving to dismiss a claim that had not been previously targeted by a similar dismissal motion. *See* Case No. 17-cv-4951, R. 10, Agreed Mot. to Stay Pleading. Mears is making his first challenge against Smith's claims. The motion to dismiss

does not rehash previous arguments made against Hicks. So there was no procedural bar to the current motion.

## IV. Conclusion

For the reasons discussed, Defendant Mears's motion to dismiss is denied. Smith's claims for an unconstitutional Fourth Amendment seizure (Count 1) and failure to intervene (Count 3) will survive another day. But the underlying facts must be fleshed out in discovery.

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2018